UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARIE VARGAS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. 19-cv-05081-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 92 |

In an Order dated January 21, 2021, I dismissed plaintiffs' Second Amended Complaint with leave to amend, requiring plaintiffs to add specific facts regarding the searches they performed looking for housing on defendant Facebook, Inc.'s platform in order to attempt to plead a plausible injury in support of their standing. January 2021 Order, Dkt. No. 86. I directed them to state facts regarding matters within their knowledge about their use of Facebook to search for housing, specifically what type of housing they searched for, during what time frames, and what results were returned. *Id*. at 10-11.

On March 3, 2021, plaintiffs filed the Third Amended Complaint ("TAC"). Dkt. No. 89. While plaintiffs have added additional details regarding the searches they performed, those additional details do not plausibly demonstrate that they were injured by any housing advertiser's possible use of Facebook's now-discontinued targeting criteria that could be used to direct paid ads at specific categories of persons.[1] And even if plaintiffs had been able to allege facts plausibly supporting a harm to any of them sufficient to confer standing, the claims plaintiffs' assert are barred by the Communications Decency Act. The TAC is DISMISSED WITH PREJUDICE.

---

[1] Plaintiffs note that Facebook was sued over the use of the targeting criteria tools by "the National Fair Housing Alliance and others, which resulted in a settlement in which Facebook purportedly vowed to revise its housing advertising practices to comply with the FHA by the end of 2019." TAC ¶ 3; *see also id*. ¶ 52 n.5 ("Based on settlement agreements Facebook has entered into with various fair housing organizations, Facebook has publicly claimed it no longer illegally targets housing ads and it no longer allows housing advertisers to use its Ad Platform to target ads based on protected classes.").

# BACKGROUND

The TAC reasserts claims under the federal Fair Housing Act[2] and analogous California[3] and New York[4] laws challenging Facebook, Inc.'s former practice of allowing advertisers to self-select target audiences for their paid housing advertisements ("Targeted Ads" or "Ads"), theoretically excluding protected classes of consumers from seeing those advertisers' particular housing ads.

I dismissed plaintiffs' Second Amended Complaint ("SAC"), following the analyses of two other Northern District of California cases that dismissed challenges to Facebook's Targeted Ad tools under other anti-discrimination laws for lack of standing. I held that plaintiffs' standing allegations were deficient because:

> There are, in short, no facts showing that any of the plaintiffs were plausibly injured personally by the ad-targeting tools that advertisers purportedly used to possibly target housing ads in areas that plaintiffs possibly searched that plausibly resulted in plaintiffs not receiving ads for housing based on the aspects of their protected classifications that they otherwise would have been in a position to pursue

January 2021 Order at 9. I directed that plaintiffs plead:

> [T]he facts within their exclusive knowledge, explaining what they actually did with respect to their use of Facebook to look for housing, how they know their white compatriot saw different ads, and facts regarding their then-current intent and ability to secure housing had they been shown a full range of ads through Facebook. Those facts – which are wholly absent from the SAC – are necessary to raise a plausible inference that Vargas or the other plaintiffs were injured in fact by the potential use of [] Facebook's discriminatory tools by housing advertisers.

*Id*. at 10-11. I did not reach Facebook's other arguments that the SAC should be dismissed with prejudice and granted leave to amend.

The TAC adds some facts regarding each plaintiff's use of Facebook during identified times to search for housing based on identified criteria. *See* TAC ¶¶ 79-152. Their allegations

---

[2] FHA, 42 U.S.C. § 3604 *et seq*.

[3] California Fair Employment and Housing Act (FEHA), Cal. Govt. Code § 12940 *et seq*. and California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq*.

[4] New York State Human Rights Law, N.Y. Exec. Law § 296.

2

regarding Facebook's Ad Platform's design and tools allowing advertisers to target specific groups for their paid Ads remained largely the same as in the SAC. *See also* January 2021 Order at 2-3.

Facebook's motion to dismiss argues that (i) plaintiffs lack standing because they fail to allege facts about their use of Facebook to search for housing ads sufficient to plausibly allege injury in fact, (ii) Facebook's publishing conduct is protected and immune under Section 230 of the Communications Decency Act (CDA, 47 U.S.C. § 230), and (iii) plaintiffs fail to state their claims under the FHA, California, and New York laws.

## LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. A Rule 12(b)(1) motion may be either facial, where the inquiry is limited to the allegations in the complaint, or factual, where the court may look beyond the complaint to consider extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Here, Facebook brings a facial attack on the sufficiency of the allegations in the SAC. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (in a facial attack under Rule 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."). A district court, "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). As with a Rule 12(b)(6) motion, however, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. STANDING

In the TAC, each plaintiff adds details about the types (costs, size, location and other "criteria") of housing searches they conducted using Facebook, the timeframes when they used

3

Facebook to conduct those searches, and states that they did not receive any housing ads that matched their criteria.[5]  They generally allege that if they had received Ads for housing that matched their criteria, they would have pursued those housing opportunities.  TAC ¶¶ 79-152.

Facebook contends that these more detailed allegations are still not sufficient to confer standing because they do not plausibly allege that any plaintiff was in fact injured by Facebook's advertisers' use of the now-defunct Ad targeting tools.  I agree.  As Facebook notes, plaintiffs do not attempt to allege that housing *was generally available* in their desired markets – much less that housing Ads satisfying those criteria *were being placed in Facebook* – under the criteria that any of the plaintiffs were using during the times they were using Facebook to search for housing.[6]  That is fatal to plaintiffs' standing.[7]

Only one plaintiff even attempts to make a showing that she received different results from the Facebook searches she (a disabled female of Hispanic descent who is a single parent with minor children) than her friend (a Caucasian) received.  Specifically, Vargas alleges that:

> On or about February or March 2019, Plaintiff Vargas was with a Caucasian friend, Chet Marcello. Plaintiff Vargas and [] Marcello sat side-by-side and conducted a search for housing through Facebook's Marketplace, both using the same search criteria Plaintiff Vargas had been using. [] Marcello received more ads for housing in locations that were preferable to Plaintiff Vargas. Plaintiff Vargas did not receive the ads that [] Marcello received.

TAC ¶ 95.

Unlike in other places in the TAC, this paragraph about Vargas and her friend's searches does not distinguish between consumer-placed ads (that plaintiffs admit did not utilize the "targeted criteria" plaintiffs claim are discriminatory) and paid Ads covered by the claims in this

---

[5] The legal standard and discussion of standing cases from my January 2021 Order is incorporated herein.

[6] *See, e.g.*, TAC ¶ 85 (Vargas searched for "a three-bedroom apartment located in lower Manhattan in the rental price range of $1,7000.00 per month"); ¶ 107 (plaintiff Skipper searched for "a two-to-three bedroom single family home or apartment unit in Yonkers or Westchester County in the monthly rental range of $1,000 to $2,000.").

[7] As I noted in the January 2021 Order, the facts of this case are wholly unlike the "testing" cases plaintiffs rely on under the FHA where the facts demonstrated the housing sought by the plaintiffs was available and that the tester received false information.  *See* January 2021 Order at 7-8 (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)).

case. Nor does plaintiff identify *any specific ads* that Marcello received that met plaintiff's criteria and that plaintiff would have pursued. She simply declares that Marcello received unspecific ads in "preferable" locations. She does not indicate those ads, even if paid ads, met her other criteria (cost, size, etc.) to plausibly allege that she was harmed by being denied access to those other, unidentified ads. That is insufficient.

Plaintiffs contend, as they did on the prior round to dismiss, that I should not follow the standing analyses of the Hon. Beth L. Freeman in *Bradley v. T-Mobile US, Inc*., 17-CV-07232-BLF, 2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) and the Hon. Jacqueline Scott Corley in *Opiotennione v. Facebook, Inc*., 19-CV-07185-JSC, 2020 WL 5877667, at *1 (N.D. Cal. Oct. 2, 2020. Both of those cases challenged Facebook's Targeting Ads program, and both were dismissed for lack of standing given plaintiffs' failure to plead plausible facts to support that they were harmed under other anti-discriminatory laws by advertiser's use of the Targeted Ad tools. Plaintiffs repeat their unsupported argument that I should not follow the analyses in those cases because standing under the FHA is broader than under Title VII and the statutory schemes considered by Judges Freeman and Corley. Oppo. at 10-11. I addressed and rejected this argument in the January 2021 Order at 7-9 (discussing and distinguishing *Bank of Am. Corp. v. City of Miami, Fla*., 137 S. Ct. 1296, 1304 (2017), *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982),*Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 110-111 (1979), and *Trafficante v. Metro. Life Ins. Co*., 409 U.S. 205, 209-212 (1972)) and will not revisit it again.[8]

In sum, what the plaintiffs have alleged is that they each used Facebook to search for housing based on identified criteria and that no results were returned that met their criteria. They *assume* (but plead no facts to support) that no results were returned because unidentified advertisers theoretically used Facebook's Targeting Ad tools to exclude them based on their

---

[8] A recent decision from the District of Maryland further supports my conclusion. In *Opiotennione v. Bozzuto Mgt. Co*., CV 20-1956 PJM, 2021 WL 3055614 (D. Md. July 20, 2021), the plaintiffs sued the underlying advertisers who allegedly used Facebook to place Targeted Ads in a discriminatory fashion in violation of local antidiscrimination and consumer protection laws. Despite plaintiffs alleging they were denied access to ads placed for specifically identified housing complexes in their area – something plaintiffs here do not even attempt to allege – the court dismissed for lack of standing. *Id*. at *3-4 (distinguishing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982)).

5

protected class statuses from seeing paid Ads for housing that they assume (again ,with no facts alleged in support) were available and would have otherwise met their criteria. Plaintiffs' claim that Facebook denied them access to unidentified Ads is the sort of generalized grievance that is insufficient to support standing. *See, e.g., Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003) ("The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing" and when "a government actor discriminates on the basis of race, the resulting injury 'accords a basis for standing only to those persons who are personally denied equal treatment.'" (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)).[9]

Having failed to plead facts supporting a plausible injury in fact sufficient to confer standing on any plaintiff, the TAC is DISMISSED with prejudice.

## II. CDA

If plaintiffs had alleged sufficient facts to plausibly state an injury from Facebook's discontinued provision of Targeting Ad tools for paid advertisers, their claims would still be barred by Section 230 of the Communications Decency Act.

Section 230 of the CDA "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC* ("*Roommates*"), 521 F.3d 1157, 1162 (9th Cir. 2008) (*en banc*). Section 230(c)(1) explains that, "providers or user of an interactive computer service shall not be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Under the CDA, "[i]mmunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information

---

[9] For similar reasons, plaintiffs have failed to plausibly plead injury and thus standing to pursue their claims under the California and New York laws alleged. *See Oppo*. at 11-12 (admitting that under the California laws "Plaintiffs must establish standing by alleging facts showing that they 'actually suffer[ed] the discriminatory conduct' being challenged and possess a 'concrete and actual interest that is not merely hypothetical or conjectural' []" and under "the NYSHRL, Plaintiffs must establish that they have been 'aggrieved by an unlawful discriminatory practice,' N.Y. Exec. Law § 297, which 'requires a threshold showing that a person has been adversely affected by the activities of defendants.'" (citations omitted)).

6

content provider,'" and when "a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Group, Inc*., 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) (*quoting Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1268-71 (9th Cir. 2016)).

Relying on *Roommates*, plaintiffs contend that Facebook's conduct here – creating, promoting use of, and profiting from paid advertisers' use of the Targeting Ad tools – removes any immunity that Facebook would otherwise have under the CDA. In *Roommates*, the Ninth Circuit explained that "the CDA does not grant immunity for inducing third parties to express illegal preferences," and found that "Roommate's own acts—posting the questionnaire and requiring answers to it—are entirely its doing and thus section 230 of the CDA does not apply to them. Roommate is entitled to no immunity." *Roommates*, 521 F.3d at 1165.

*Roommates* is materially distinguishable from this case based on plaintiffs' allegations in the TAC that the now-defunct Ad Targeting process was made available by Facebook for optional use by advertisers placing a host of different types of paid-advertisements.[10] Unlike in *Roommates* where use of the discriminatory criteria was mandated, here use of the tools was neither mandated nor inherently discriminatory given the design of the tools for use by a wide variety of advertisers.

In *Dyroff*, the Ninth Circuit concluded that tools created by the website creator – there, "recommendations and notifications" the website sent to users based on the user's inquiries that ultimately connected a drug dealer and a drug purchaser – did not turn the defendant who

---

[10] *See, e.g*., TAC ¶¶ 45, 46, 50, 52, 55, incorporating by reference multiple descriptions of how Facebook's Ad Platform and the tools at issue work, including:
https://www.facebook.com/about/ads
https://www.facebook.com/business/success/categories/real-estate
https://www.facebook.com/business/ads

Facebook also requests, and plaintiffs' object, to my taking notice of the following: (i) Facebook's "Discriminatory Practices" subpage of its "Advertising Policies" webpage; (ii) Facebook's "Advertising Policies" webpage; (iii) screenshots of the Facebook Marketplace; (iv) screenshots of Facebook's user sign-up screens that existed at the time the New York Plaintiffs registered for Facebook; (v) Facebook's past terms of service that existed at the time the New York Plaintiffs registered for Facebook; (vi) Facebook's terms of service effective as of February 4, 2009; and (vii) Facebook's present terms of service. Dkt. Nos. 95, 97, 99. The request for judicial notice is DENIED. I do not rely on these documents or the information in this Order.

controlled the website into a content creator unshielded by CDA immunity. The panel confirmed that the tools were "meant to facilitate the communication and content of others. They are not content in and of themselves." *Dyroff*, 934 F.3d 1093, 1098 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (where website "questionnaire facilitated the expression of information by individual users" including proposing sexually suggestive phrases that could facilitate the development of libelous profiles, but left "selection of the content [] exclusively to the user," and defendant was not "responsible, even in part, for associating certain multiple choice responses with a set of physical characteristics, a group of essay answers, and a photograph," website operator was not information content provider falling outside Section 230's immunity); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009) (no liability based on Google's use of "Keyword Tool," that employs "an algorithm to suggest specific keywords to advertisers").

Here, the Ad Tools are neutral. It is the users "that ultimately determine what content to post, such that the tool merely provides 'a framework that could be utilized for proper or improper purposes, . . . .'" *Roommates*, 521 F.3d at 1172 (analyzing *Carafano*). Therefore, even if the plaintiffs could allege facts supporting a plausible injury, their claims are barred by Section 230.[11]

## CONCLUSION

Accordingly, plaintiffs' TAC is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: August 20, 2021

William H. Orrick
United States District Judge

---

[11] Having found two bases for dismissal with prejudice of plaintiffs' TAC, I need not reach defendant's other arguments for dismissal for failure to plead required elements of the claims under the FHA and state laws.

8